OPINION OF THE COURT
Jones, J.
We hold that this complaint by a patient against her treating physician sets forth a cause of action based on intentional fraud as well as a cause of action in negligence for medical malpractice. We further conclude that, because of the physician’s alleged subsequent intentional concealment of the malpractice and misrepresentation as to its cure, the time within which the action in negligence could be brought was not limited to the then applicable three-year statutory period of limitations and that on the present motion to dismiss the complaint it cannot be said that the action was not thereafter commenced within a reasonable time after discovery of the malpractice. Finally we hold that the Statute of Limitations applicable to the claim for damages based on the intentional fraud is the six-year statute. We note that different measures of damages will be applicable to the two causes of action.
On defendant’s present motion to dismiss the complaint under CPLR 3211 (subd [a], par 5) on the ground that the *447 plaintiffs claims are barred by the Statute of Limitations, we accept the allegations of the complaint and the admissible portions of plaintiffs supporting affidavits (CPLR 3211, subd [c]). On October 19, 1970 Dr. Saeli performed a surgical excision of a node from plaintiffs neck. Plaintiff alleges that during the operation on her neck the surgeon negligently injured a spinal-accessory nerve in her neck and also injured branches of her cervical plexus. Following the operation plaintiff told her surgeon that she was experiencing numbness in the right side of her face and neck and that it was difficult and painful for her to raise her right arm. It is alleged that the physician was aware of the negligent manner in which he had performed the surgery and aware, too, that as a result of his negligence plaintiff had suffered a potentially permanent injury. It is further alleged that the physician willfully, falsely and fraudulently told plaintiff that her postoperative problems, pain and difficulties were transient and that they would disappear if she would continue a regimen of physiotherapy which he had prescribed and which was then being given by Dr. Lane. Plaintiff continued with the physiotherapy prescribed by Dr. Saeli until October, 1974. In the meantime she had moved to Syracuse, New York, where she sought further medical advice. In January, 1974 she was first apprised by the Syracuse physician of the true nature of her injury and that it probably had been caused at the time of her surgery. This doctor’s diagnosis was substantially confirmed in October, 1974 by a professor of medicine, specializing in neurology, at Upstate Medical Center in Syracuse, who also advised that reanastomosis of the sectioned nerve four years after the surgery would not be a physiologically successful procedure. It is further alleged that Dr. Saeli had intentionally withheld information from plaintiff as to the true nature and source of her injury, in consequence of which she was deprived of the opportunity for cure of her condition.
The present action against Dr. Saeli was commenced in April, 1976.[1] Prior to service of an answer, Dr. Saeli moved to dismiss the complaint under CPLR 3211 (subd [a], par 5) on the ground that the cause or causes of action alleged were *448 barred by the Statute of Limitations. Plaintiff cross-moved for leave to amend her complaint specifically to include a cause of action for malpractice. Supreme Court denied defendant’s motion to dismiss and granted plaintiff leave to amend her complaint as requested. On appeal, the Appellate Division reversed, granted defendant’s motion and dismissed the complaint. Plaintiff thereupon appealed as of right to our court.
In our view the complaint sufficiently sets forth two causes of action although not explicitly or separately denominated— one in negligence for medical malpractice on the part of Dr. Saeli in connection with the surgical excision of the node on October 19, 1970, the other for an intentional tort in knowingly and fraudulently misinforming plaintiff as to her physical condition and misrepresenting that physiotherapy would produce a cure.[2] Our analysis begins with the consideration of the cause of action in negligence.
The complaint sufficiently sets forth a cause of action for medical malpractice; the critical issue is whether this cause of action was barred by the then applicable three-year Statute of Limitations (CPLR 214, subd 6). Normally the statute would have precluded institution in April, 1976 of a claim for damages for malpractice alleged to have occurred in October, 1970. This complaint, however, further alleges that defendant intentionally concealed the alleged malpractice from plaintiff and falsely assured her of effective treatment, as a result of which plaintiff did not discover the injury to the nerve until October, 1974. In this circumstance principles of equitable estoppel are applicable to relieve plaintiff from the proscriptions of the statute. As noted by Mr. Justice Earle C. Bastow in Erbe v Lincoln Rochester Trust Co. (13 AD2d 211, 213, mot for rearg and mot for lv to app den 14 AD2d 509, app dsmd 11 NY2d 754): "Fraudulent representations may play a dual role. They may be the basis for an independent action for fraud. They may also, .in equity, be a basis for an equitable estoppel barring the defendants from invoking the Statute of Limitations as against a cause of action for breach of fiduciary relations.”
It is the rule that a defendant may be estopped to plead *449 the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action. (General Stencils v Chiappa, 18 NY2d 125; Erbe v Lincoln Rochester Trust Co., 13 AD2d 211, mot for rearg and mot for lv to app den 14 AD2d 509, app dsmd 11 NY2d 754, supra; see Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations, Ann., 43 ALR3d 429.) The allegations of her complaint bring this plaintiff within the shelter of this rule. The elements of reliance by plaintiff on the alleged misrepresentations as the cause of her failure sooner to institute the action for malpractice and of justification for such reliance, both necessarily to be established by her, are sufficiently pleaded within the fair intendment of the allegations of this complaint.
From an examination of prior cases in our court, including the records and briefs, it appears that in one case, without written exposition, the court rejected recognition and application of the doctrine of equitable estoppel to extend the period of limitations in medical malpractice cases — Ranalli v Breed (277 NY 630). (Cf. Rokita v Bushwick Hosp. [Germaine], 7 NY2d 710.) Both of those cases were decided prior to our court’s decision in General Stencils v Chiappa (18 NY2d 125, supra), however, and the unarticulated determination in Ranalli must be deemed to have been overruled by that later decision. The doctrine has been applied in other States in circumstances which are legally indistinguishable from the present. (Bowman v McPheeters, 77 Cal App 2d 795; Stafford v Shulz, 42 Cal 2d 767; Guy v Schuldt, 236 Ind 101; Adams v Ison, 249 SW2d 791 [Ky]; cf. Schaffer v Larzelere, 410 Pa 402.) The quality of the relationship between physician and patient, with confidence normally reposed by the patient in the physician and the unquestioning reliance which such relationship may be expected to engender in the patient, make application of the doctrine peculiarly appropriate in such cases.
It is as important to determine the effect of the doctrine of equitable estoppel as it is to determine that it applies. If the conduct relied on (fraud, misrepresentation or other deception) has ceased to be operational within the otherwise applicable period of limitations (or perhaps within a reasonable time prior to the expiration of such period), many courts have denied application of the doctrine on the ground that the period during which the plaintiff was justifiably lulled into inactivity had expired prior to the termination of the statu *450 tory period, and that the plaintiff had thereafter had sufficient time to commence his action prior to the expiration of the period of limitations. (E.g., 509 Sixth Ave. Corp. v New York City Tr. Auth., 24 AD2d 975; see Plaintiff’s Diligence as Affecting His Right to Have Defendant Estopped From Pleading the Statute of Limitations, Ann., 44 ALR3d 760, §§ 5, 6, pp 768-774; Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations, Ann., 43 ALR3d 429, § 6, pp 453-454.) That is not the present situation. Plaintiff has alleged that her discovery of the malpractice in this case (the point at which the conduct here relied on ceased to be operational) did not occur until October, 1974 (or possibly in January of that year if inference be drawn from the letter of her Syracuse doctor dated January 9, 1974 submitted in opposition to the motion). Whichever the month of discovery in 1974, the three-year Statute of Limitations had already expired in October, 1973.
Where, as here, the conduct relied on ceases to be operational after the expiration of the period of limitations, two approaches may be discerned in the cases. By one, further delay on the part of the plaintiff in commencing his action may be held to be subject to the counterdefense of laches to be pleaded and proved by the defendant (see Plaintiff’s Diligence as Affecting His Right to Have Defendant Estopped From Pleading the Statute of Limitations, Ann., 44 ALR3d 760, § 4, p 767). The preferable analysis, however, holds that due diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine (see Plaintiff’s Diligence as Affecting His Right to Have Defendant Estopped From Pleading the Statute of Limitations, Ann., 44 ALR3d 760, § 7, pp 774-779). Under this approach, which we endorse, the burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational. Whether in any particular instance the plaintiff will have discharged his responsibility of due diligence in this regard must necessarily depend on all the relevant circumstances. The length of the legislatively prescribed period of limitations is sometimes said to be relevant, and courts have held that in no event will the plaintiff be found to have exercised the required diligence if his action is deferred beyond the date which would be marked by the *451 reapplication of the statutory period, i.e., that the length of the statutory period itself sets an outside limit on what will be regarded as due diligence. (See Plaintiffs Diligence as Affecting His Right to Have Defendant Estopped From Pleading the Statute of Limitations, Ann., 44 ALR3d 760, § 8, pp 775-776). In the present case such an outside limit was not exceeded; the action was brought less than three years after discovery in 1974. It is not possible or appropriate, however, on the present motion addressed to the pleading, presenting us as it must with only a skeletal record, to determine whether this plaintiff met her obligation of due diligence when she instituted the present action in April, 1976. It suffices for disposition of the present appeal to note our conclusion that it cannot now be determined as a matter of law that the reasonable time for bringing the present action had expired prior to its institution in April, 1976.
In passing we observe that if it is established that plaintiff is not precluded from prosecuting the cause of action in negligence and she proves that cause on the merits, the measure of damages which she will be entitled to recover will be that normally associated with medical malpractice actions in situations such as the present.
We turn then to consideration of the other cause of action, noting that it asserts a claim in fraud as an intentional tort.[3] The essential elements, here alleged or within the reasonable intendment of the complaint, are knowledge on the part of the physician of the fact of his malpractice and of his patient’s injury in consequence thereof, coupled with a subsequent intentional, material misrepresentation by him to his patient known by him to be false at the time it was made, and on which the patient relied to his damage — in this case, defendant’s intentionally concealing from his patient the fact of the malpractice and thereafter fraudulently misstating that the therapy prescribed would effect a cure. This is more than another aspect of the malpractice or even another act of alleged negligent malpractice on the part of the treating physician; the complaint alleges an intentional fraud — that *452 Dr. Saeli, knowing it to be untrue yet expecting his patient to rely on his advice, advised her that physiotherapy would produce a cure, in consequence of which fraudulent misrepresentation the patient was deprived of the opportunity for cure of the condition initially caused by the doctor’s alleged malpractice. If these allegations are proved they will establish an intentional tort, separate from and subsequent to the malpractice claim. (Calabrese v Bickley, 1 AD2d 874.) Recovery of damages in such case is governed by the six-year Statute of Limitations under CPLR 213 (subd 8). The application of the three-year Statute of Limitations is not mandated by the circumstance that the fraud alleged arises as a sequel to an alleged malpractice.[4]
In reaching this determination, we recognize and approve, but distinguish, cases which hold that, without more, concealment by a physician or failure to disclose his own malpractice does not give rise to a cause of action in fraud or deceit separate and different from the customary malpractice action, thereby entitling the plaintiff to bring his action within the longer period limited for such claims. (E.g., Golia v Health Ins. Plan of Greater N. Y., 6 AD2d 884, affd 7 NY2d 931; Ranalli v Breed, 277 NY 630, supra; Conklin v Draper, 229 App Div 227, affd 254 NY 620; Tulloch v Haselo, 218 App Div 313.) Such nondisclosure or concealment may affect the damages recoverable, or, conceivably in a proper case in conjunction with other factors, provide a foundation for seeking to invoke the doctrine of equitable estoppel to extend the applicable period of limitations. Standing alone such nondisclosure or concealment will not, however, serve as the basis for a distinct cause of action in fraud.
We observe that, as in the instance of fraud claims generally, this plaintiff, too, will be required to prove her claim by clear and convincing evidence (Rudman v Cowles Communications, 30 NY2d 1, 10; see 24 NY Jur, Fraud and Deceit, § 284, p 371). If she succeeds in this respect, the available measure of her damages will be that applicable in fraud actions, i.e., damages caused by the fraud, as distin *453 guished in this case from damages occasioned by the alleged malpractice.
In 1975 our Legislature determined as a matter of policy to limit the extent of liability in medical malpractice claims when it adopted a more stringent Statute of Limitations (CPLR 214-a; L 1975, ch 109, § 6). Lest the implications of our present decision be misapprehended as subjecting physicians to a greater exposure to liability in consequence of errors of professional judgment at a time when there is legitimate concern both from the standpoint of the profession and the public as to the economic import of recently ballooning malpractice recoveries and thus to run counter to or to flout the general policy direction articulated by the Legislature, it is appropriate to stress certain aspects of the present case and the theories of liability on which we sustain this complaint.
At the outset we observe that the exposure to liability we here discuss is not based on errors of professional judgment; it is predicated on proof of the commission of an intentional tort, in this instance, fraud. As to that cause of action:
First, it must be established that the physician knew (or demonstrably had reason to know) of the fact of his malpractice and of the injury suffered by his patient in consequence thereof.
Second, it must be established that, knowing it to be false at the time, the physician thereafter made material, factual misrepresentation to the patient with respect to the subject matter of the malpractice and the therapy appropriate to its cure, on which the patient justifiably relied.
Third, all elements of the intentional tort of fraud must be established by clear and convincing evidence. Recognizing, too, the hazards of proliferating litigation of baseless claims, attention is drawn to the requirements of CPLR 3016 (subd [b]). While, of course, motions to dismiss under CPLR 3211 are properly addressed to the allegations set forth in the complaint,[5] on motions for summary judgment under CPLR 3212 evidentiary proof in admissible form must be tendered in support of all the elements of the alleged cause of action.
Fourth, if there is not an available, efficacious remedy or cure which the plaintiff is diverted from undertaking in consequence of the intentional, fraudulent misrepresentation —as in many instances of medical malpractice there may not *454 be — there will normally be only minimal damages, if any. It will be necessary to demonstrate that the condition caused by the malpractice could have been corrected or alleviated. Thus, in the present case, if it can be shown that at the time of Dr. Saeli’s alleged fraudulent misrepresentations it was already too late to undertake a reanastomosis of the severed nerve, this plaintiff will have sustained little or no damages in consequence of the alleged fraud. If only a partial cure were then possible, damages would be assessable on that basis. Recovery would be greatest, of course, if plaintiff were diverted from what could otherwise have been a complete cure.
Accordingly, it will be seen that the present decision is not to be expected to open the proverbial floodgates. On the other hand, in human terms it would be unthinkable today not to hold a professional person liable for knowingly and intentionally misleading his patient in consequence of which, to the physician’s foreknowledge, the patient was deprived of an opportunity for escape from a medical predicament which the physician by his own negligence had initially inflicted on his patient. With respect to the application of the doctrine of equitable estoppel to a defense of Statute of Limitations pleaded in a malpractice action, again we are concerned with an intentional, not merely negligent, wrong — the purposeful concealment and misrepresentation of the fact and consequences of the malpractice. It would not be tolerable to permit a physician by whose fraud, misrepresentation or deception his patient has been induced to delay filing legal proceedings until after the time limited by statute to reap the benefits of his own misconduct.
For the reasons stated the order of the Appellate Division should be reversed, with costs to abide the event, and the order of Supreme Court denying defendant’s motion to dismiss reinstated.

. Dr. Lane, the physiotherapist, had died prior to the commencement of this action. Lincoln First Bank as executor of his estate was named a codefendant and service was effected on the executor in May, 1976. The codefendant did not participate in the present motion to dismiss and is not otherwise directly involved in the present appeal.

. Because we think that the complaint as it stands sufficiently pleads these two causes of action and that no further amendment of the complaint is necessary to include a cause of action for malpractice, we treat as presently academic the dispostions below with respect to denial of plaintiffs cross motion for leave to serve an amended complaint. (Cf. CPLR 3025, subd [a].)

. No cause of action is set forth in the complaint in this case postulated on the theory that plaintiff was fraudulently prevented from bringing her action for alleged malpractice until barred by the Statute of Limitations and that she is entitled to recover the damages caused her by such fraud (see Fraud and Deceit: Liability in Damages for Preventing Bringing of Action Before Its Being Barred by Statute of Limitations, Ann., 33 ALR3d 1077).

. We observe that the alleged tortious conduct in this instance occurred prior to the adoption of CPLR 214-a (L 1975, ch 109, § 6, eff July 1, 1975). There is thus no basis here for any assertion that by the enactment of that statute the Legislature intended to prescribe a statutory period of limitations with respect to all claims arising out of the physician-patient relationship no matter on what legal theory predicated.

. (But cf. Rovello v Orofino Realty Co., 40 NY2d 633.)